NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

KATHY S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, P.P., E.P., B.P., *Appellees*.

No. 1 CA-JV 15-0219
FILED 1-21-2016

---

Appeal from the Superior Court in Maricopa County
No.  JD511138
The Honorable Janice K. Crawford, Judge

**AFFIRMED**

---

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee DCS*

---

## MEMORANDUM DECISION

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Patricia A. Orozco joined.

---

**J O N E S**, Judge:

**¶1** Kathy S. (Mother) appeals the juvenile court's order terminating her parental rights to P.P., E.P., and B.P. (the Children), arguing the Department of Child Safety (DCS) failed to prove the statutory grounds for severance by clear and convincing evidence and that severance was in the Children's best interests by a preponderance of the evidence. For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2** In June 2013, DCS received a report that Mother was using methamphetamine, using inappropriate physical discipline, and neglecting four children in her care, ages thirteen, eleven, six, and five. P.P. reportedly witnessed Mother "do lines" and "shoot needles," and there were concerns regarding lack of supervision when Mother locked the Children out of the home so she could use drugs. Mother submitted a hair and urine sample, both of which tested positive for methamphetamine, and the Children were removed from her care and placed with their maternal aunt (Aunt).[2]

**¶3** DCS filed a petition alleging the Children were dependent as to Mother on the grounds of chronic substance abuse, neglect, and physical abuse. The juvenile court adjudicated the Children dependent in July 2013

---

[1] We view the facts in the light most favorable to upholding the juvenile court's order terminating parental rights. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citing *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008)).

[2] The father of the Children's eleven-year-old half-sister was granted emergency custody following the events giving rise to this dependency.

and adopted a case plan of family reunification.[3]  Mother was advised she needed to complete substance abuse treatment, maintain sobriety, engage in recommended mental health treatment, maintain safe and stable housing, engage in positive visits with the Children, and attend parenting classes.

¶4        Mother participated in a psychological examination in October 2013 after missing a prior appointment.  She reported she began using methamphetamine at nineteen, was addicted to methamphetamine, and, now thirty-eight, continued to actively use the drug despite completing a substance abuse program in 2012.  Mother stated she began using methamphetamine because of depression and reported a genetic predisposition toward substance abuse.  She also reported she had no income and supported the family on B.P.'s Social Security check, which she continued to receive after the Children were removed, and financial assistance from neighbors and family members.

¶5        The psychologist concluded Mother suffered from methamphetamine addiction and was "prone to depression," although he was unable to determine "whether the depression is a result of her drug use and circumstances or she was using methamphetamine to self-medicate for her depression."  The psychologist recommended Mother engage in drug counseling, parenting classes, and individual counseling, but only after she was able to demonstrate a period of sobriety.  He reported her "treatment motivation" was lower than normal explaining, "[h]er responses suggest she is satisfied with herself as she is . . . and that, as a result, she sees little need for change in her behavior."  He suggested Mother might benefit from antidepressant medication, but, like counseling and parenting classes, a psychiatric evaluation would not be appropriate until she maintained a period of sobriety because "meth creates all kinds of moods for people." The psychologist testified Mother could not parent appropriately while using methamphetamine and explained that her prognosis to become a minimally adequate parent was dependent upon her ability to maintain sobriety; if she could not stay sober, her prognosis was poor.

---

[3]       The juvenile court also adjudicated the Children dependent as to their father, who was incarcerated at the time.  His parental rights were terminated in June 2015, his appeal was dismissed in October 2015, and he is not a party to this appeal.

¶6            Mother did not obtain or maintain any period of sobriety during the dependency proceedings.  She was immediately referred for substance abuse testing and treatment and, between July and December 2013, missed thirteen of twenty-six required urinalysis tests and tested positive for methamphetamine three times.  She submitted to one of four required tests in January 2014, tested positive for methamphetamine on that occasion, and did not submit to any testing through May of 2014.  In May 2014, Mother submitted one of two required tests and on that occasion tested positive for methamphetamine.

¶7            Mother underwent a substance abuse assessment in July 2013 which recommended she participate in intensive outpatient treatment, including group and individual counseling for six months.  The service was closed in August 2013 for lack of participation.  DCS made a second referral for substance abuse treatment in early September 2013, but Mother did not engage in any services until October 2013.  She missed six group sessions and six required tests that first month and three group sessions in November 2013.  Mother was placed on an attendance contract, and, in February 2014, after continuing to miss group sessions, the service was again closed.  A third referral was submitted in March 2014, but Mother did not schedule an intake appointment.

¶8            During this period, Mother was offered parent aide services and supervised visitation with the Children one time per week for two hours.  Out of nineteen scheduled visits between August 2013 and early December 2013, Mother cancelled five visits, arrived late three times, and ended the visits early on four occasions.  During these visits, Mother relied upon another family member to provide supplies for the Children and hit B.P. in the back of the head for knocking a hole in the wall at Aunt's home.  A second parent aide referral was submitted in November 2013, but the aide could not reach Mother for several weeks, and visitation did not resume until February 2014.  By June 2014, Mother had attended only seven of thirty-four scheduled visits and two one-on-one parenting skills sessions.  The parent aide reported Mother's progress was minimal given her continued use of methamphetamine, inconsistent participation, and failure to effectively discipline the Children.  The service was closed as a result of Mother's lack of compliance.  And, although Mother was permitted telephone contact throughout, her attempts to communicate with the Children lasted only a couple weeks after they were removed, and she did not call them even on birthdays or holidays.

¶9          In March 2014, Mother spent a week in jail on charges of failure to appear and driving on a suspended license.  In June, she was arrested for criminal trespassing and sentenced to thirty days in jail.  After being released in early July 2014, Mother tested positive for methamphetamine twice.  She was referred for substance abuse treatment for the fourth time in August 2014.  But, Mother did not participate in treatment or submit to any substance abuse testing in August and only submitted to one of three scheduled tests in September.  That test was negative for any illegal substance.  Mother reported having been evicted from her trailer and living in a shelter but did not provide DCS with requested contact information so she could resume visitation.

¶10          In September 2014, over Mother's objection, the juvenile court changed the case plan to severance and adoption.  The court also ordered DCS to continue to provide substance abuse treatment and testing, supervised visitation, and bus passes.  DCS immediately submitted its fifth referral for substance abuse treatment.  DCS filed a motion to terminate the parent-child relationship in October 2014 alleging severance was warranted as a result of Mother's history of chronic abuse of dangerous drugs, as well as her failure to correct the circumstances giving rise to the dependency after the Children had been in out-of-home care for more than fifteen months.  *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(3),[4] (8)(c).

¶11          Following the change in case plan, Mother's participation in drug testing improved, but, between October 2014 and January 2015, she still missed nine of twenty-seven required tests, submitted one diluted sample, and tested positive for methamphetamine seven times.  Mother was offered additional supportive services through the substance abuse treatment provider in January 2015, but declined.  Although she had not seen the Children since May 2014, she did not engage with the parent aide to arrange visitation; nor had she obtained stable employment or housing, having been "kicked out" of a sober living home and a friend's home and then voluntarily left a domestic violence shelter.  After reinitiating contact with the Children in November 2014, Mother attended only seven of fourteen visits and, at trial, the parent aide service was pending closure, again, after Mother had failed to make contact for thirty days.

---

[4]          Absent material revisions from the relevant date, we cite a statute's current version.

¶12            In March 2015, just nine days before trial began, Mother was admitted to an inpatient substance abuse treatment program. She quit the program after one month and denied further services were necessary to ensure her sobriety.

¶13            At the time of trial, Mother's fifth referral for substance abuse treatment was pending closure for lack of participation. The DCS case manager expressed concern that Mother had yet to actually complete any substance abuse treatment or participate consistently in testing and apparently continued to actively use methamphetamine, estimating that Mother's longest period of sobriety during the dependency was two to three weeks. And, because Mother had not obtained and maintained any period of sobriety, DCS remained unable to refer her for a mental health assessment or counseling.

¶14            Evidence was presented that, although all of the Children experienced challenges after being removed, Aunt was currently meeting the Children's physical, emotional, and educational needs, as well as providing structure, consistency, and regular meals that allowed the Children's behavior and grades to improve. Aunt had also participated in services to assist in managing B.P.'s special needs and was willing to continue to do so. The DCS case manager testified P.P., the only one of the Children over the age of twelve, consented to the adoption. She also testified she believed termination of Mother's parental rights to be in the Children's best interests.

¶15            After taking the matter under advisement, the juvenile court issued an order detailing its findings of fact regarding Mother's significant history of substance abuse and sporadic participation in services. The court determined DCS had made reasonable efforts to reunify Mother with the Children and had proven by clear and convincing evidence severance was warranted based upon Mother's chronic substance abuse and the Children's length of time in out-of-home care. The court also found DCS had proven by a preponderance of the evidence that severance was in the Children's best interests and entered an order terminating Mother's parental rights to the Children.

¶16            Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235, 12-120.21(A)(1), and -2101(A)(1) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶17**    To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one of the statutory grounds for termination enumerated in A.R.S. § 8-533(B) and must find by a preponderance of the evidence that termination would serve the child's best interests.  Ariz. R.P. Juv. Ct. 66(C); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).  We do not reweigh the evidence on appeal; as the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002)).  "Accordingly, we view the evidence and reasonable inferences to be drawn from it in the light most favorable to sustaining the court's decision," *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citing *Jesus M.* 203 Ariz. at 282, ¶ 13), and will affirm a termination order "unless there is no reasonable evidence to support" the court's factual findings.  *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998) (citing *Maricopa Cnty. Juv. Action No. JS-4374*, 137 Ariz. 19, 21 (App. 1983), and *Maricopa Cnty. Juv. Action No. JS-378*, 21 Ariz. App. 202, 204 (1974)).

## I.    DCS Made Reasonable Efforts to Provide Reunification Services.

**¶18**    A parent's rights may be terminated if: "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period."  A.R.S. § 8-533(B)(3); *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 15 (App. 2010).  In order to sever on this ground, there must be a finding that reasonable efforts were made to reunify the family, or that such efforts would not restore the parent's ability to care for a child within a reasonable time. *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005) (citing *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 191-92, ¶¶ 31-34 (App. 1999)).  DCS has an affirmative duty "to make all reasonable efforts to preserve the family relationship," *Mary Ellen C.*, 193 Ariz. at 186, ¶ 1 (citing *Maricopa Cnty. Juv. Action No. JA 33794*, 171 Ariz. 90, 91-92 (App. 1991), and *Maricopa Cnty. Juv. Action No. JS-6520*, 157 Ariz. 238, 241 (App. 1988)), and must provide a parent "with the time and opportunity to participate in programs designed to help her to become an effective parent."  *Maricopa Cnty. Juv. Action No. JS–501904*, 180 Ariz. 348, 353 (App. 1994).  But, DCS "is not required to provide every conceivable service or to ensure that a parent participates in

each service it offers." *Id.* (citing *Maricopa Cnty. Juv. Action No. JS-5209 and No. JS-4963*, 143 Ariz. 178, 189 (App. 1984)). Additionally, in determining whether severance was appropriate in this case, the juvenile court was required to consider not only "the availability of reunification services to the parent," but also "the participation of the parent in [those] services." A.R.S. § 8-533(D).

¶19 Mother does not dispute the chronic nature of her substance abuse, its effect on her ability to discharge her parental responsibilities, or her failure to engage in the offered services. Rather, Mother argues DCS failed to make reasonable reunification efforts. Specifically, Mother contends DCS should have offered her inpatient treatment for her substance abuse and services "related to her possible mental health issues," and DCS's failure to offer these services prevented her from engaging in services that would foster reunification. However, the juvenile court specifically found:

- There was no persuasive or credible evidence presented that Mother needed in-patient substance abuse treatment instead of the intensive outpatient substance abuse treatment recommended [within her substance abuse assessment]. It was Mother who failed to participate in the services offered to her by [DCS]. Mother was provided with the time and opportunity to participate in appropriate programs to reunify with the Children.

- There was no persuasive or credible evidence presented that Mother suffered from a mental health issue that needed to be treated before Mother's substance abuse could be addressed.

¶20 These findings are supported by the record, which reflects Mother was offered a panoply of services over the course of nearly two years which were designed to address the primary impediment to reunification — Mother's persistent use of and admitted addiction to methamphetamine. Mother was offered substance abuse testing, substance abuse treatment, parent aide services, supervised visitation, and a psychological evaluation. DCS re-submitted referrals for these services multiple times despite Mother's lack of commitment, consistency, and participation. Although Mother argued at trial she needed inpatient substance abuse treatment and mental health services, this testimony was disputed. Mother acknowledged she had never before requested

additional services and specifically declined the treatment provider's offer of additional support in January 2015. And, ultimately, the juvenile court was not persuaded additional services were necessary.

**¶21** The record supports the juvenile court's determination that DCS made reasonable efforts to provide Mother rehabilitative services. We will not second-guess that assessment of the evidence, *see supra* ¶ 17, and we find no error.[5]

## II. Termination of the Parent-Child Relationship is in the Children's Best Interests.

**¶22** Mother also argues the juvenile court erred in determining termination was in the Children's best interests because there was "no credible evidence that the [C]hildren would benefit from the severance." However, the benefit of severance to a child is the opportunity for permanency where "'parents maintain parental rights but refuse to assume parental responsibilities.'" *Oscar O.*, 209 Ariz. at 337, ¶ 16 (quoting *JS-6520*, 157 Ariz. at 243). In evaluating a child's opportunity for permanency, the juvenile court considers whether there is a current plan for the children's adoption and whether the current placement is meeting the children's needs. *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23 (App. 2013) (citations omitted).

**¶23** Here, the juvenile court acknowledged the Children were in need of permanency after having been in out-of-home care for more than fifteen months and found termination of Mother's parental rights would "make the Children free for adoption" into "a safe, permanent, substance free home." The court also found Aunt was willing to adopt the Children, had been successful in managing the Children's past behavioral issues, and was able to meet their needs.

**¶24** The best interests finding is supported by the record, and we find no abuse of discretion.

---

[5] Because reasonable evidence supports the juvenile court's conclusion that severance was warranted on the grounds of substance abuse, we need not address Mother's claims pertaining to other grounds. *See Jesus M.*, 203 Ariz. at 280, ¶ 4 (citing *Michael J.*, 196 Ariz. at 251, ¶ 27, and *JS-6520*, 157 Ariz. at 242).

**CONCLUSION**

¶25        The juvenile court's order terminating Mother's parental rights is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama